UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-560-CRS

**AMY C. SMITH,**                                                                                         **Plaintiff,**

v.

**OLD DOMINION FREIGHT LINE, INC, et al.,**                                          **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's motion to exclude or limit the opinions of two of Defendants' rebuttal experts, William Smock and Lane VanIngen (DN 52). Defendants filed a response in opposition (DN 59) and Plaintiff filed a reply (DN 66). The motion is now ripe for review. For the following reasons, Plaintiffs' motion is **denied**.

## BACKGROUND

Plaintiff asks the Court, pursuant to Rules 26(a)(2)(D)(ii) and 37(c)(1) of the Federal Rules of Civil Procedure, to exclude and/or limit the opinions of two rebuttal experts proffered by Defendants. Pursuant to a series of amended scheduling orders, the following deadlines applied to the parties' disclosures of expert opinions: (1) Plaintiff's expert witness deadline -- May 18, 2016; (2) Defendants' expert witness deadline -- June 20, 2016; and (3) both parties' rebuttal expert witness deadline -- July 13, 2016. (DN 29, 34.) The parties appear to agree that Plaintiff served on Defendants four expert reports[1] on May 18, 2016, and that Defendants

---

[1] The expert reports were as follows, as described by Plaintiff: (1) David Stopper (forensic reconstruction and investigations, traffic safety, commercial motor vehicle operations and motor carrier safety regulations); (2) Sara Ford, MRC/Linda Jones, MRC, MBA, MPA, CRC (vocational and economic assessment, wage loss/loss of earnings); (3) Nancy Grugle, Ph.D. (human factors analysis); and (4) Donald Marks, M.D., Ph.D. (internal medicine, medication adverse effects, driver health impacts). (DN 52 at 2.)

disclosed two expert witnesses[2] who jointly submitted one report on June 20, 2016. Then, on July 13, 2016, Plaintiff disclosed two rebuttal expert reports, authored by David Stopper and Nancy Grugle, two of the individuals who she identified in her initial expert disclosure. On the same date, Defendant identified five new individuals as rebuttal experts.[3] Plaintiff now contends that two of the purported rebuttal experts disclosed by Defendants, William Smock and Lane VanIngen, were in reality *new* expert witnesses offering *new* opinions, rather than opinions designed to rebut the expert reports proffered by Plaintiff. Defendants disagree, arguing that their rebuttal experts intended to -- and did -- rebut the expert opinions proffered by Plaintiff.

## DISCUSSION

Rule 26(a)(2) of the Federal Rules of Civil Procedure sets forth certain parameters applicable to expert testimony. Absent a stipulation or court order to the contrary, disclosures of "evidence [] intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)[ must be made] within 30 days of the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii). In this case, it is undisputed that Defendants served Smock and VanIngen's reports in compliance with the Court's July 13, 2016 deadline for disclosure of rebuttal experts. The question before the Court is whether Smock and VanIngen's reports were within the permissible scope of rebuttal experts provided in the Rule -- that is, whether they were "intended solely to contradict or rebut evidence on the same subject matter" identified by one or more expert witnesses disclosed by Plaintiff. Fed. R. Civ. P. 26(a)(2)(D)(ii).

---

[2] Robert Bortolin, B.A.Sc., P. Eng., and James Hrycay, M.A.Sc., P. Eng., both of whose reporting areas Defendants described as "engineering investigation and analysis of the motor vehicle accident." (DN 52 at 2.)

[3] (1) William Smock, M.S., M.D. (medical issues and driver medical examinations); (2) Lane VanIngen (FMCSR/FMCSA regulations and driver safety); (3) Alison Smiley, Ph.D., CCPE (human factors analysis); (4) Howard Caston, Ph.D. (loss of earnings capacity/vocational expert); and (5) Frank Slesnick, Ph.D. (calculation of lost earnings). (DN 52 at 3.)

The parties state in their briefs that there is little case law from our district applying Rule 26(a)(2)(D)(ii). This is true; however, after completion of the parties' briefing on the instant motion, Magistrate Judge Dave Whalin issued a memorandum opinion and order addressing a number of motions in limine, including arguments regarding rebuttal experts. Magistrate Judge Whalin's opinion is instructive with respect to both the permissible scope of rebuttal expert opinions and the analytical approach to questions involving Rule 26(a)(2)(D)(ii). *See Louisville Mktg. v. Jewelry Candles, LLC*, 2016 U.S. Dist. LEXIS 153328, *26-34 (W.D. Ky. Nov. 4, 2016). In the *Jewelry Candles* case, Magistrate Judge Whalin considered whether a defense expert's second report was properly considered an initial report or a rebuttal report. The plaintiff argued that the report in question was should be classified as an initial report and that it should have an opportunity to rebut the opinion. The court examined the contents of the defense expert's report, as compared to the reports of three of plaintiff's experts to whom he purported to respond. *Id.* at *29. The court concluded that the defense expert's report "addresse[d] the same subject matter as [the plaintiff's experts] -- namely, whether 'jewelry in candles' and 'jewelry candles' are generic terms," and that his report "provide[d] a counterpoint for [plaintiff's] expert reports indicating the terms and logos were generic." *Id.* at *31. The court went on to state that the defense expert's report exceeded the scope of "simply responding" to the plaintiff's experts, but it concluded that "any matters regarding the potentially excessive scope of his rebuttal testimony can be challenged through objections and rigorous cross-examination." *Id.* at *31-32; *see id.* at *32 (further finding that report identified three flaws in a third plaintiff's expert's report and refuted those points).

Looking beyond the Sixth Circuit, the Northern District of Illinois provided a helpful,

albeit non-binding, discussion of the issue in *Green v. Kubota Tractor Corporation*, 2012 U.S. Dist. LEXIS 56770 (N.D. Ill. Apr. 24, 2012).  In *Green*, the defendant argued that a rebuttal expert identified by plaintiffs did not actually rebut defendant's experts, but rather, "merely covered the same subjects as plaintiffs' originally disclosed experts," and therefore, his opinions should have been disclosed at the time of plaintiffs' original expert opinions. *Id.* at *8-9.  The court first described the opinions set forth in the purported rebuttal report and then examined it in light of the opinions offered by defendant's experts.  The court found that the rebuttal expert's opinions were "specifically targeted at the expert evidence proffered by the defendants and . . . either contradict[ed] or rebut[ted] that evidence." *Id.* at *13 (laying out differing opinions among the parties' experts regarding a certain type of technology used in lawn mowers).

Further, the *Green* court acknowledged that the rebuttal expert opinions "touch[ed] upon subjects previously addressed by" certain of plaintiffs' initially disclosed experts, but stated that "the mere fact that opinions offered in a rebuttal report touch upon the same subjects covered in an initial expert report [by the same party] does not require that the rebuttal reports be stricken." *Id.* at *13 (discussing *City of Gary v. Paul Shafer*, 2009 U.S. Dist. LEXIS 41004 (N.D. Ind. May 13, 2009)).  The court went on to decline to adopt a rule that would exclude a rebuttal opinion that could have been offered as part of the party's initial expert disclosures, as that "would open the doors to 'vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing relevant material.'" *Id.* at *17-18 (quoting *Shafer*, 2009 U.S. Dist. LEXIS 41004 at *5).

Following the approaches employed in the cases discussed above, the Court will examine

Smock's and VanIngen's purported rebuttal expert reports at issue in light of the Plaintiff expert reports that they purport to rebut: those of Marks and Stopper, respectively. While the motion, response, and reply all discuss the extent to which Smock and VanIngen rebut the expert reports of Marks and Stopper, respectively, the parties have not filed Marks and Stopper's reports as exhibits to their briefs. Fortunately, the two reports have been filed elsewhere in the record, so they are available for the Court's review. (*See* DN 96-8 (Stopper's expert report, exhibit to Plaintiff's response to DN 72); DN 98-5 (Marks's expert report, exhibit to Plaintiff's response to DN 73).)

### A. William Smock, M.S., M.D.

In his report, Smock sets forth an itemized list of the documents that he reviewed, and states that the "purpose of [his] review was to examine the medical issues and facts in order to develop opinions in this case." (DN 52-2 at 1-2.) As Plaintiff emphasizes, Smock makes only one direct reference to Marks, whose opinion Defendants argue Smock intends to rebut. Smock states as follows:

> I have reviewed the report of Dr. Marks and the information related to [Defendant Danny] Webb's medications and medical conditions. I strongly disagree with many of his opinions and speculative conclusions, as there is no foundation based upon the medical or forensic evidence in this case.

(*Id.* at 3.) However, the frequency with which Smock mentions Marks's name, or whether he structures his opinion in the same way as Marks's opinion, is not determinative of whether Smock's opinion is deemed a rebuttal opinion for purposes of Rule 26. The question before the Court is whether Smock's opinion is "intended solely to contradict or rebut evidence on *the same subject matter* identified by" Marks. Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added).

5

Returning to Smock's report, after providing a narrative analysis, he offered five opinions regarding Webb's medical condition at the time of the motor vehicle accident underlying this case.

1. There is no medical or forensic evidence any of Mr. Webb's medical conditions played a role in or contributed to the incident on March 7th, 2015.
2. There is no medical or forensic evidence any of Mr. Webb's prescribed medications played a role in or contributed to the incident on March 7th, 2015.
3. There is forensic evidence Mr. Danny Webb was awake, alert and initiated evasive maneuvers, including steering inputs, reducing throttle input and the application of brakes, prior to the collision on I-71.
4. There is no medical evidence Mr. Danny Webb suffered from sleep apnea or that sleep apnea played any role in or contributed to the incident on March 7th, 2015.
5. There is no medical or forensic evidence, which indicates Mr. Danny Webb was physically or medically impaired on March 7th, 2015.

(DN 52-2 at 3-4.)

In comparison, after setting forth a narrative analysis of Webb's medical records in light of the motor vehicle accident, Marks provided the following conclusions:

1. Due to numerous existing medical conditions, Danny Webb was not fit to operate a commercial motor vehicle, such as the Old Dominion Freight Line tandem-trailer semi-truck that he was driving on March 7, 2015;
2. Danny Webb failed or refused to be completely forthcoming with and/or disclose in entirety all medical conditions known to him and existing to him at the time that he was interviewed by the medical examiner on January 12, 2015;
3. Danny Webb failed or refused to comply with and follow medical advice and instructions by his treating physicians regarding apneic episodes, sleep apnea, and the advice to receive treatment in a sleep clinic and/or sleep study, which he was known to exhibit prior to the fatal accident;
4. Danny Webb was consuming a significant number and amount of prescription medications which in combination probably

        adversely affected his driving abilities and contributed to the fatal accident;
5. Danny Webb's existing medical conditions and failures or refusals to timely and appropriately address those medical conditions prior to the collision rendered him unfit to operate a[] commercial motor vehicle at the time of the collision; and
6. Danny Webb's physically debilitated condition rendered him a danger to both himself and other drivers and passengers traveling on the roadway on March 7, 2015, when the fatal accident in question occurred.

(DN 98-5 at 8.)

      Having carefully examined Smock's report and Marks's report, and particularly the conclusions that each draws, the Court finds that Smock's report addresses the same subject matter as Marks's report. Specifically, Smock disagrees with Marks's conclusions regarding whether Webb's medical conditions, including possible sleep apnea, and/or use of prescription medications, caused him to be impaired or unfit to operate the tractor-trailer, generally and on the night of the fatal accident. While Smock does not expressly analyze the medical records in reference to Marks's analysis, with the exception of his statement of "strong disagree[ment] with Marks" (DN 52-2 at 3), the Court finds that this does not preclude a conclusion that Smock's report is a proper rebuttal pursuant to Rule 26(a)(2)(D)(ii). It is clear to the Court that Smock addressed the same "subject matter" as Marks and that his analysis did not veer unnecessarily beyond the scope of Marks's report. If anything, it appears to the Court that *Marks's report*, not Smock's, is the broader one with respect to scope of analysis. Smock's report addresses some, but not all, of the areas of analysis in Marks's report. For example, Marks discussed Webb's "advanced age" and its possible impact on his driving (*see* DN 98-5 at 6); Smock did not expressly discuss Webb's age. Based on the foregoing, Plaintiff's motion is denied insofar as it seeks exclusion or limitation of Smock's report.

...

### B. Lane VanIngen

VanIngen offered six "conclusions" in her report to Defendants. These conclusions are set forth below.

> 1. Old Dominion and Webb were subject to the Federal Motor Carrier Safety Regulations ("FMCSR") on March 27 [sic], 2015, the date of the subject accident.
> 2. Old Dominion has demonstrated safety management controls that meet the prescribed FMCSA Safety Fitness Standard outlined in 49 CFR Part 385.
> 3. Old Dominion has historically operated at a level of highway safety significantly higher than that of the U.S. motor carrier population as a whole.
> 4. Webb was fully qualified to operate a CMV on the date of the accident that is the basis for this case.
> 5. The evidence in this case indicates that Webb was not talking on his cell phone on the day of the subject accident in a way that violated FMCSR provisions.
> 6. The report issued by Stopper dated May 16, 2016 contains positions and compliance determinations that are inconsistent and inaccurate when compared to the applicable safety regulations.

(DN 52-5 at 5-10.) Plaintiff contends that with the exception of the sixth and final conclusion, VanIngen's conclusions do not rebut Stopper's expert report, and therefore, VanIngen's report should be excluded.

Unlike the other three experts discussed herein, Stopper did not close his report with enumerated conclusions. Rather, he provided a lengthy analysis (over 40 pages long) of the fatal accident and closed with a summary of his opinions. While the structural differences between an enumerated list of conclusions and a narrative summary make for an imperfect comparison, both show the expert's conclusions in his or her own words. Stopper's summary is excerpted below:

> Drivers of CMVs are considered to be operating in their capacity as professional drivers and are held to a higher standard of care than other motorists pursuant to interpretations by the U.S.

Department of Transportation. The Federal Highway Administration, Office of Motor Carrier Standards, published language in this regard[] pursuant to the February 8, 1991 Interpretations of 49 CFR Part 383:

> *"Because of the greater potential for loss of life, serious injury, and significant property damage in accident involving CMV's, the FHWA's regulations (in 49 CR Part 383) hold drivers of these vehicles to a higher standard of conduct than other highway users."*

Mr. Webb testified that he observed brake lights and the vehicle stopped in the lane ahead as he crossed the hillcrest. That distance is found to be approximately ¼ mile (1300-1400 feet) from the point of impact. Although the evidence indicates Mr. Webb made some brake application as he approached the stopped vehicles he had more than adequate time and distance to bring his vehicle to a full and complete stop well before impact. Scene photographs show the approach to the collision site was free of snow and ice and the surface appeared to be dry. Friction tests performed by the Oldham County Investigators indicated a good surface friction level and made no note of icy conditions, which would have prevented Mr. Webb from bringing his vehicle to a stop before impact.

Mr. Webb's failure to apply the most basic required knowledge and skill as instructed in the Commercial Driver's License manual as demonstrated by his failure to "See" and properly respond to other vehicles on the roadway that were a conflict, his failure to manage space around his vehicle and his failure to reduce his speed and respond to slowing traffic indicates a significant distracted driver and callous indifference to this higher standard and to the safety of other motorists with whom he shares the road.

A preventable accident is defined pursuant to *49 CFR §385.3* as:

> *Preventable accident on the part of a motor carrier means an accident (1) that involved a commercial motor vehicle, and (2) that could have been averted but for an act, or failure to act, by the motor carrier or the driver.*

> The motor carrier was responsible for ensuring the safe operation of its driver and the equipment operating under its authority. This included providing driver training and reinforcing the required skills and knowledge that would include the critical problems related to distracted driving especially with the use of cellular phones. While Mr. Webb described utilizing a hands-free cell phone device, which is permitted under the Federal Motor Carrier Safety Regulations, the motor carrier must ensure its drivers understand the potential dangers involved with distracted driving.
>
> I found no indications Carl A. Winner, Jr., or his Jaro Transportation Services, Inc. truck tractor semi-trailer, contributed to this fatal collision. Mr. Winner was at a full stop, when Mr. Webb, operating his Old Dominion truck tractor, semi-trailer & full trailer, collided with the stopped Subaru operated by Mr. Smith.

(DN 98-2 at 43-44 (emphasis in original).)

Again, having reviewed each expert's report and considered the parties' arguments, the Court finds that VanIngen's report is within the bounds of a rebuttal expert opinion pursuant to Rule 26(a)(2)(D)(ii). The Court disagrees with Plaintiff's statement that VanIngen's report is "in actuality, overwhelmingly [an] initial expert report[]" which Defendants seek to use in order "to backdoor initial expert testimony [and] opinions" after their initial expert deadline passed. (DN 52 at 8.) Plaintiff attempts to hold Defendants to a nearly impossible task -- to respond precisely to the opinions expressed by Plaintiff's experts and to stop short of providing any additional information. It should be obvious that if one of Defendants' experts disagrees with the opinions set forth by one of Plaintiff's experts, then he or she will preface the rebuttal report with background information and subsequently provide analysis and conclusions that differ from those proffered by Plaintiff's expert. This is appropriate in light of Rule 26, so long as the rebuttal expert's opinion is confined to the same "subject matter" as the opposing expert. Rule 26(a)(2)(D)(ii). Looking to Stopper and VanIngen's reports, both focus on the federal highway

10

safety regulations, their application to Old Dominion and Webb, and Old Dominion and Webb's compliance or noncompliance therewith.

The sole aspect of VanIngen's list of conclusions with which the Court takes issue is her statement regarding Old Dominion's historical record of "operat[ing] at a level of highway safety significantly higher than that of the U.S. motor carrier population as a whole." (DN 52-5 at 6.) This goes beyond the scope of Stopper's commentary on Old Dominion, which the Court interprets as being confined to the crash underlying this action. With that said, the conclusion is still closely related to the subject matter of Stopper's report, and, as Magistrate Judge Whalin reasoned in *Jewelry Candles*, "any matters regarding the potentially excessive scope of [VanIngen's] rebuttal testimony can be challenged through objections and rigorous cross-examination." *Jewelry Candles*, 2016 U.S. Dist. LEXIS 153328 at *31-32.

Based on the foregoing, the Court concludes that Plaintiff's motion is denied as it relates to VanIngen's rebuttal opinion.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion to exclude and/or limit the opinions of Defendants' rebuttal experts (DN 52) is **DENIED**.

cc: Counsel of record

11