**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:15-CV-560-CRS**

AMY C. SMITH,                                                                                    **Plaintiff,**

v.

OLD DOMINION FREIGHT LINE, INC, et al.,                                    **Defendants.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

The Court conducted a telephonic status conference in this case on April 19, 2017. After the conference, the Court entered an order permitting the parties to, among other things, file simultaneous briefs on the issue of whether Plaintiff Amy C. Smith ("Plaintiff") should be granted leave to reopen a Rule 30(b)(6) deposition of Defendant Old Dominion Freight Line, Inc. ("Old Dominion"). (DN 131 at 2.) On May 10, 2017, Plaintiff filed a brief in support of a renewed 30(b)(6) deposition (DN 134), and Old Dominion, joined by Defendant Danny Webb ("Webb") (collectively, "Defendants"), filed a brief in opposition to a renewed deposition (DN 133). The purpose of the instant opinion and order is to resolve that dispute. For the reasons set forth below, Plaintiff's motion to reopen the 30(b)(6) deposition (**DN 134**) is **granted in part** and **denied in part**.

## BACKGROUND

This case stems from a March 7, 2015 highway collision that led to the death of a twenty-one-year-old man, Nicholas A. Smith ("Smith"). It is undisputed that a tractor-trailer driven by Webb ran into the back of the car driven by Smith, crushing the car and, after some period of time in which he remained alive and conscious, killing Smith. This Court conducted a settlement conference in May 2016, and the parties participated in a private mediation in February 2017.

Neither effort was successful. Additionally, a number of discovery disputes have arisen; the Court has resolved many such disputes others remain pending. Several potentially dispositive motions are pending as well. In short, all parties, their counsel, and the Court have expended significant time and resources on the case.

On April 12, 2016, Plaintiff took the Rule 30(b)(6) deposition of Old Dominion's designated representative, Vice President of Safety and Compliance Sam Faucette ("Faucette"). According to Plaintiff, prior to the deposition, Plaintiff requested several times, including as early as January 20, 2016, that Old Dominion produce documentation of its "post-accident interview" related to the crash underlying this case. But, Plaintiff says, Old Dominion only produced the document mid-way through the April 12, 2016 deposition. (DN 134-1 at 2; *see* DN 134-3 (post-accident interview form).) On the post-accident interview form, the question, "Was cell phone/handheld in use [at the time of the crash]?" is marked "Yes." (DN 134-3 at 1.) According to Plaintiff, reviewing this form during Faucette's deposition[1] confirmed to her that Webb was using his cell phone at the time of the collision. Further, Plaintiff contends that the document is evidence that Old Dominion maintains internal records of accidents involving its drivers and the use of cell phones. (DN 134-1 at 2.) The form includes a section entitled "Driver Statement." (DN 134-3 at 2.) Old Dominion redacted the contents of this section prior to producing the document to Plaintiff; Plaintiff does not appear to argue that she is entitled to review an unredacted version.

---

[1] The Court notes that throughout this opinion, it refers to "Faucette's deposition" and the "30(b)(6) deposition" interchangeably. The Court recognizes that Faucette testified as Old Dominion's designated 30(b)(6) representative and not in his individual capacity. Old Dominion indicates that it will again designate Faucette as its representative if the Court permits Plaintiff to reopen the 30(b)(6) deposition.

After reviewing the post-accident interview form, Plaintiff requested a forensic examination of Webb's cell phone. The Court ordered a third-party forensic review of the cell phone for the period of March 6, 2015 at 9:00 p.m. through March 7, 2015 at 6:00 a.m. Subsequently, after *in camera* review, the Court ordered Old Dominion to produce the forensic review materials to Plaintiff. (*See* DN 41, 56.) Plaintiff's position is that the cell phone records revealed that Webb was actively sending and receiving text messages while operating the tractor-trailer on the night of the crash, and that some of these text messages were exchanged with other Old Dominion drivers. (DN 134-1 (citing DN 111-4).) On September 20, 2016, Plaintiff served on Defendants a second set of interrogatories and requests for production of documents, which, in Plaintiff's words, "focused on cellphone communications between Old Dominion drivers leading up to the crash, telephone reports of accidents, and relevant recordkeeping pertaining to accidents and/or collisions involving Old Dominion drivers and cellphone manipulation and/or texting." (DN 134-1 (citing DN 111-8, 111-9).) Plaintiff filed a motion to compel responses and production in relation to that set of discovery requests; that motion is pending (DN 111). On February 13, 2017, Plaintiff served on Defendants a second Rule 30(b)(6) deposition notice. (DN 134-4.) Not having obtained agreement from Old Dominion to reconvene the 30(b)(6) deposition, and in light of the Court's standing order that parties participate in a conference with the Court prior to filing discovery-related motions, Plaintiff requested a conference. This was the impetus for the April 19, 2017 telephone conference.

During the April 19, 2017 telephone conference, the parties presented their positions on the propriety of reopening the 30(b)(6) deposition. The Court indicated that it was inclined to allow the 30(b)(6) deposition to be reopened. The Court stated that, in its view, reopening the

deposition would help the case to move forward, as would reconvening a settlement conference and entering rulings on any still-pending discovery-related and potentially dispositive motions. The Court encouraged the parties to work together to resolve any disputes regarding the scope of the deposition notice and, if they could not come to an agreement on such disputes, permitted them to file briefs on whether the deposition should be reopened. The Court's decision to permit briefing on this issue was largely related to Plaintiff not having informed Defendants prior to the conference as to the issues that were to be discussed. While defense counsel ably argued Defendants' position on the 30(b)(6) deposition issue, counsel stated that until the call began, he was not aware of the purpose of the call.[2] For that reason, the Court allowed the parties to brief the issue rather than entering a ruling at that time. Consistent with the Court's statements that it was inclined to permit the deposition to go forward and that it wished to move the case along, the Court set an expedited briefing schedule, ordering the parties to "file simultaneous briefs on the disputed issues related to Plaintiff's desire to reconvene the [30(b)(6)] deposition" if they could not reach agreement on their own. (DN 131 at 2.)

## DISCUSSION

### 1. The Parties' Arguments

Plaintiff argues that even though she previously took the deposition of Faucette, Old Dominion's designated representative, she should be permitted to reopen the deposition as a result of information that she obtained -- through no fault of her own -- only after the original

---

[2] Plaintiff argues that at no time has Old Dominion formally objected to the deposition notice, and that this lack of response has caused significant delay. This argument does not deserve much analysis for two reasons. First, Defendants' opposition to renewing the 30(b)(6) deposition is abundantly clear in light of its brief in opposition (DN 133). Second, one would presume that the reason Defendants did not formally object to the deposition notice at an earlier time is that discovery in this action has been stayed since well before the deposition notice was served in February 2017.

4

deposition began. Plaintiff argues that as a result of that new information, she knows more about "both the duration and extensiveness of improper cellphone use and text messaging by [] Webb," as well as "the frequency of improper cell phone use and text messaging by other active Old Dominion drivers on the same shift," and "recordkeeping attendant to the use of hand-held mobile devices by drivers involved in commercial truck crashes." (DN 134-1 at 4.) Plaintiff avers that the second deposition notice includes nine topics, which she describes as pertaining to "Old Dominion policies, procedures and/or manuals regarding cellphone and text messaging communications, alterations and/or changes implemented by Old Dominion regarding the same and [related to certain provisions of the Code of Federal Regulations], Old Dominion training materials related to hand-held mobile device use, and citations/warnings related to hand-held mobile device use by Old Dominion drivers." (*Id.*) The deposition notice also includes nine document requests, some of which correlate exactly with the deposition topics, and others that are less directly related.

Plaintiff argues that if she is not permitted to reexamine Faucette, then there is a risk of substantial prejudice to Plaintiff in the form of surprise testimony at trial. (DN 134-1 at 4-5.) Further, Plaintiff contends that the topics and documents identified in the deposition notice are within the reasonable and permissible scope of discovery as set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure, and emphasizes the Court's discretion in dealing with discovery matters. (*Id.* at 5-6.) Plaintiff also looks to Rule 406 of the Federal Rules of Evidence, arguing that the information she seeks is directly related to Old Dominion's routine practices as a company or organization. (*Id.* at 6-7.) Finally, Plaintiff argues that the discovery she seeks

through a renewed deposition will be admissible under at least one exception to the prohibition of "other acts" evidence found in Rule 404(b) of the Federal Rules of Evidence.

In response, Defendants first argues that Plaintiff should not be permitted to take the deposition of Old Dominion's president. (DN 133 at 2-5.) The Court already addressed this issue in the post-April 19, 2017 telephone conference order. (DN 131 at 2 ("The stay of discovery SHALL NOT be lifted to permit Plaintiff to take the deposition of Old Dominion's president.").) Defendants urge the Court to "permanently stay that deposition." (DN 133 at 2.) The Court declines to do so. The Court does not join Defendants in concluding that Plaintiff seeks to depose Old Dominion's president purely as a mode of harassing Old Dominion. Moreover, the Court did not invite briefing on this issue, and for that reason, the Court does not have the benefit of reviewing written argument from Plaintiff on this issue. As is clear from a number of orders in the record, discovery in this case has been stayed, and the Court has lifted the stay only for discrete purposes. The stay of discovery stands. The Court rejects Defendants' request that it "permanently stay" a deposition by Plaintiff of Old Dominion's president. If, after completing a renewed 30(b)(6) deposition, or at some other time, Plaintiff renews her request to depose Old Dominion's president, the Court will address the issue in more depth. There is no need to do so at this time.

Defendants devote the majority of their brief in opposition to reopening the 30(b)(6) deposition to breaking down each of the nine topics identified in the deposition notice. The Court will address Defendants' specific arguments as needed in the discussion below.

## 2. Legal Standard

If a deponent "has already been deposed in [a] case," then "[a] party must obtain leave of court" in order to take the deposition. Fed. R. Civ. P. 30(a)(2)(A)(ii). "[T]he court must grant leave [to resume the deposition] to the extent consistent with Rule 26(b)(1) and (2)." *Id.* at (a)(2). Rule 26(b)(1) is the touchstone for the scope of civil discovery. Rule 26(b)(1) provides as follows:

> (1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2) addresses limitations on the frequency and extent of discovery; subpart (b)(2)(A) gives the court discretion to alter limits on written discovery and the length of depositions under Rule 30, and subpart (b)(2)(B) sets forth limitations on electronically stored information. *Id.* at (b)(2)(A)-(B). Finally, subpart (b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1) [set forth above]." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Plaintiff captioned her deposition notice and motion as pursuant to Rule 30(b)(5)-(6). Rule 30(b)(5) relates to the duties of an officer before whom a deposition is conducted. *See* Fed. R. Civ. P. 30(b)(5). Rule 30(b)(6) contains the substantive rule in relation to which Old Dominion selected Faucette to represent it in the deposition noticed by Plaintiff. In this memorandum opinion and order, the Court primarily refers to the deposition that Plaintiff seeks as a Rule 30(b)(6) deposition, though the Court acknowledges that the deposition notice cites subpart (b)(5) as well. Rule 30(b)(6) provides as follows:

> (6) *Notice or Subpoena Directed to an Organization.* In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6).

Plaintiff also argues that Rules 406 and 404(b) of the Federal Rules of Evidence weigh in favor of the Court granting her leave to reopen the 30(b)(6) deposition. Rule 406 provides, "Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Fed. R. Evid. 406. Plaintiff argues that reopening the 30(b)(6) deposition may lead to testimony and documentary evidence of Old Dominion's habits or routine practices in relation to the use of hand-held devices for calls and/or text messaging by its drivers. Finally, Plaintiff

contends that the testimony and documentary production resulting from reopening the deposition may lead to "other acts" evidence that could be admissible under one of the purposes for which such evidence is permitted under Rule 404(b), such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

### 3. Application to This Case

As is set forth above, during the April 19, 2017 telephone conference, the Court stated that it was inclined to grant Plaintiff leave to reopen the 30(b)(6) deposition. This remains the Court's conclusion after reviewing the parties' briefs, the exhibits thereto, and relevant case law. The Court will grant Plaintiff leave to reopen the 30(b)(6) deposition of Old Dominion as to *some* of the topics and document requests set forth in the deposition notice. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii). The Court is persuaded by Plaintiff's argument that she did not and could not fully depose Faucette in April 2016 due to certain information that she received only after that deposition began. Specifically, the Court credits Plaintiff's statements that only during Faucette's deposition did she receive a copy of the post-accident interview form, despite Plaintiff having requested the document as many as three months earlier.

Moreover, even though Webb admitted during his deposition -- which took place on March 25, 2016, less than three weeks before the original 30(b)(6) deposition -- that he was talking on the phone at the time of the collision,[3] the Court credits Plaintiff's assertion that only

---

[3]
>
> Q. Were you on the phone at the time of the accident?
> A. Yes.
> Q. Who were you on the phone with?
> A. Jimmy Gullet [phonetic], one of the other drivers.

(DN 133-8 at 6 (Webb deposition transcript, p. 57, l. 1-6).)

upon receipt of the post-accident interview form during Faucette's deposition did she have evidence that *Old Dominion* had a record of Webb's cell phone use during the accident.[4]  It is not a great leap to conclude from a review of this form, as Plaintiff does, that Old Dominion maintains records of all of the accidents involving its drivers and that it documents whether the drivers were using cell phones at the time of the accidents.  The Court is persuaded that it should grant Plaintiff leave to reopen her 30(b)(6) deposition so that she may pursue additional questioning stemming from the evidence that became available to her only at the time of the original 30(b)(6) deposition.

Having determined that Plaintiff may resume the 30(b)(6) deposition, the Court must now determine the scope of the deposition, taking into consideration Rule 26(b)(1).  *See* Fed. R. Civ. P. 26(a)(2) ("[T]he court must grant leave [to resume the deposition] to the extent consistent with Rule 26(b)(1) and (2).").   Rule 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on any party's claim or defense."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).  The Court has wide discretion when dealing with discovery matters, including when deciding whether information might be relevant.  *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008); *Chrysler Corp. v. Fedders*

---

[4]     It is worth noting that the following materials are *not* in the record: (1) Plaintiff's January 2016 request for production that --she contends -- encompassed the post-accident interview form; (2) a full transcript of Faucette's deposition; and (3) a full transcript of Webb's deposition.  Rather, the record contains only short excerpts of Faucette and Webb's deposition transcripts.  Accordingly, the Court's findings are based on the parties' assertions in their briefs and the exhibits that the parties have filed.

*Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). Critically, Rule 26 was recently amended to include a proportionality provision. *Albritton v. CVS Caremark Corp.*, 2016 U.S. Dist. LEXIS 83606 at *4 (W.D. Ky. June 28, 2016) ("Proportionality is the touchstone of the revised Rule 26(b)(1)'s scope of discovery provisions.").

    a.  <u>Deposition Notice Topics</u>

        1)  *All ODFL policies, procedures and manuals pertaining to CMV driver and/or operator hand held device usage, including cellphone and text messaging communications in CMV's;*

The Court concludes that Plaintiff will not be permitted to address the first deposition notice topic at the time of the renewed 30(b)(6) deposition. Plaintiff seeks to question Old Dominion's representative about all Old Dominion policies, procedures, and manuals related to use of hand-held mobile devices, including cell phone use and text messaging, by CMV driver/operators. Old Dominion concedes that it does not have in place a policy, procedure, or manual regarding the use of hand-held mobile devices. (*See* DN 133 at 7 ("There is no specific cellphone policy in the manual. The requirement to use a hands-free device is a federal regulatory requirement and Old Dominion makes it clear in its Handbook that all drivers are to comply with and follow all Federal Motor Carrier Safety Administration regulations.").) Old Dominion's position is clear from its briefing and Faucette's deposition testimony to date. It believes that its drivers must comply with federal regulations and that it need not maintain its own policies regarding matters that are covered by the federal regulations, including the use of mobile devices while operating vehicles. (*See, e.g.*, DN 133-4 at 4 ("Q. What about him being on the phone at the same time? A. As long as he was within the federal guidelines and using a hands-free device, I -- he's within the regulation."); *id.* at 10 ("Q. [] What is your understanding of the Federal Motor Carrier Safety regulations in the operation of a phone[?] A. That handheld

mobile communication devices are illegal to be used while operating a commercial motor vehicle."); *id.* at 13-14 ("Q. Same set of facts, and add in there the fact that he was on his cell phone, Old Dominion still doesn't have a problem with his conduct. A. If he was not violating the federal regulations, he's within his right to be on a wireless headset.").)

Based a review of the parties' briefs and the deposition transcript excerpts that are in the record, the Court finds that to permit Plaintiff to re-depose Faucette on this issue would be unreasonably cumulative or duplicative and that Plaintiff already had "ample opportunity to obtain the information" during the original 30(b)(6) deposition. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii). Old Dominion's position and rationale related to the lack of an internal policy related to cell phone use is clear and was clear at the time of Faucette's original deposition. The mid-deposition discovery of additional information about Webb's use of a cell phone did not hamper Plaintiff's counsel's opportunity or ability to further question Faucette about this particular issue.

Finally, having resolved the issue of the first noticed deposition topic for the reasons set forth above, the Court need not address Old Dominion's argument that it has no "duty [as] a motor carrier to formulate a policy that is already addressed (and therefore made unnecessary) by a specific federal regulation which allows the use of a hands-free device, which every commercial driver is required to follow." (DN 133 at 9 (parenthetical in original).) The issue of Old Dominion's duty of care is not before the Court at this time.

> 2) *All changes, alterations, modifications, deletions and/or additions to ODFL's policies, procedures and manuals as a result of 49 CFR 392.82;*

With the second and third deposition notice topics, Plaintiff seeks to question Faucette regarding changes to its policies, procedures, and manuals as a result of two provisions of the

Code of Federal Regulations.  The first provision, 49 CFR 392.82, provides as follows:

§ 392.82 Using a hand-held mobile telephone.

(a)      (1) No driver shall use a hand-held mobile telephone while driving a CMV.
              (2) No motor carrier shall allow or require its drivers to use a hand-held mobile telephone while driving a CMV.

(b) Definitions. For the purpose of this section only, driving means operating a commercial motor vehicle on a highway, including while temporarily stationary because of traffic, a traffic control device, or other momentary delays. Driving does not include operating a commercial motor vehicle when the driver has moved the vehicle to the side of, or off, a highway and has halted in a location where the vehicle can safely remain stationary.

(c) Emergency exception. Using a hand-held mobile telephone is permissible by drivers of a CMV when necessary to communicate with law enforcement officials or other emergency services.

49 CFR 392.82.  As Old Dominion points out, Plaintiff questioned Faucette about this regulation during the original deposition and introduced a copy of the regulation as a deposition exhibit. (*See* DN 133-5 at 9.)  Old Dominion argues that it would be cumulative and duplicative to allow Plaintiff to further question Faucette on this issue.  (DN 133 at 12.)

The Court disagrees.  Unlike the first deposition topic, in relation to which the Court finds that Plaintiff had ample opportunity to question -- and did question -- Faucette regarding the relevant issue, with respect to the second topic, the Court is persuaded that Plaintiff should be able to reopen this topic due to the belated revelation of the post-accident interview form. Specifically, upon reviewing that form, Plaintiff developed documentary evidence that Old Dominion maintains a record of the use (or non-use) of cell phones by drivers who are involved in accidents.  This is consistent with the Court's rulings below permitting additional discovery on accidents involving other drivers, dating back to before the 2011 effective date of this code

provision.  Because the Court finds that evidence regarding accidents involving other drivers may be relevant to Plaintiff's claims, the Court concludes that it is permissible for Plaintiff to further question Old Dominion's representative regarding any possible changes to Old Dominion's internal policies after the codification of Section 392.82.  *If*, before or during trial, the Court concludes that evidence related to a prior accident or accidents is admissible for a permissible purpose, then evidence regarding any changes by Old Dominion to its internal policies during the time period in which other accidents occurred may also be admissible.  *See Burke v. U-Haul Int'l, Inc.*, 2007 U.S. Dist. LEXIS 7539, *4-6 (W.D. Ky. Jan 31, 2007) (setting forth four reasons commonly cited to justify use of a prior accident: (1) to show a dangerous condition; (2) to prove that the defendant knew of the danger; (3) to show the risk that the defendant's conduct created; and (4) to show that the alleged defect or dangerous condition caused the injury) (citations omitted).

This reasoning must not be misinterpreted as a ruling on admissibility of evidence at trial. Rule 26(b)(1) cautions that "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).  Any questions or disputes as to admissibility of evidence will be addressed by Senior District Judge Simpson in resolving motions in limine or in the course of trial.  For purposes of the motion now before the Court, it suffices to say that Plaintiff may question Faucette regarding any changes to Old Dominion policies and procedures subsequent to the codification of this provision.  The deposition notice does not contain any date range for this second deposition topic.  In the interest of proportionality, the Court limits the date range on this topic to January 1, 2010 to April 12, 2016,

the date of the original 30(b)(6) deposition (as Faucette testified that, as of that date, Old

Dominion had no relevant policy).

> 3) *All changes, alterations, modifications, deletions and/or additions to ODFL's policies, procedures and manuals as a result of 49 CFR 392.80;*

The provision that is at issue in the third noticed topic is 49 CFR 392.80, which provides

as follows:

> § 392.80 Prohibition against texting.
>
> (a) Prohibition. No driver shall engage in texting while driving.
>
> (b) Motor Carriers. No motor carrier shall allow or require its drivers to engage in texting while driving.
>
> (c) Definition. For the purpose of this section only, driving means operating a commercial motor vehicle, with the motor running, including while temporarily stationary because of traffic, a traffic control device, or other momentary delays. Driving does not include operating a commercial motor vehicle with or without the motor running when the driver moved the vehicle to the side of, or off, a highway, as defined in 49 CFR 390.5, and halted in a location where the vehicle can safely remain stationary.
>
> (d) Emergency exception. Texting while driving is permissible by drivers of a commercial motor vehicle when necessary to communicate with law enforcement officials or other emergency services.

49 CFR 392.80.

Old Dominion argues that Plaintiff should not be able to further question Faucette on this

issue, as she already did and/or had the opportunity to do so at the original deposition and

because there is no evidence to suggest that texting at the time of the accident. Old Dominion

disputes Plaintiff's contention that the forensic review of Webb's cell phone data is of any

import, arguing that it does not support Plaintiff's argument that Webb was texting at or around

15

the time of the collision. (DN 133 at 13.) Again, the undersigned will not make determinations

regarding disputed issues of fact or weigh the import of certain evidence for any party's case.

Additionally, while Old Dominion's next point, regarding the seemingly belated filing of the

motion to reopen the deposition (*see id.* at 14-15), is well-taken, discovery in this matter has

been stayed since November 1, 2016 (*see* DN 76). The stay may well have influenced the timing

of the deposition notice.

The Court will allow further questioning on the third topic set forth in the deposition

notice for the same reasons that it permits additional questioning on the second topic (the other

CFR provision). Also for the same reasons, the Court will limit the scope of questioning on this

topic to January 1, 2010 to April 12, 2016, the date of the original 30(b)(6) deposition.

> 4) *All videos, recordings, testimonials, training materials, seminar materials, brochures, presentation materials, PowerPoints, displays, exhibits, demonstrations, pamphlets, bulletins, memorandum and/or communications (in any form or any type) disseminated from ODFL to its drivers regarding the use of hand held mobile devices while driving and/or texting while driving a CMV;*

In essence, with the fourth deposition topic, Plaintiff seeks to address videos, recordings,

and any other materials or communications disseminated from Old Dominion to its drivers

regarding the use of hand-held mobile devices while driving and/or texting while operating a

CMV. Old Dominion focuses on the fact that the topic encompasses drivers other than Webb,

which it argues is beyond the scope of Plaintiff's claims. (*See* DN 133 at 15 ("Plaintiff cannot

bring a claim against Old Dominion regarding **all** of its employees, or **all** of its drivers, or any

other such claims. The allegations in the Complaint are specific to Mr. Webb's conduct.").)

This argument overlooks the fact the topic *includes Webb*, as well as other drivers. Materials

related to the use of hand-held devices while driving are relevant to Plaintiff's claim of negligent

supervision and training of Webb.  Moreover, as is set forth above in relation to topic two, if, before or during trial, the Court concludes that evidence related to a prior accident or accidents is admissible for a permissible purpose, then evidence regarding any information disseminated by Old Dominion to its drivers following such accident(s) may also be admissible.  *See generally* Fed. R. Evid. 404(b).

The Court will limit the date range of topic four, as no range is currently identified.  As to topic four, the date range will again be from January 1, 2010 to April 12, 2016, the date of the original 30(b)(6) deposition.

> 5) *All citations, warnings, tickets and/or violations issued to ODFL CMV operators and/or drivers from January 1, 2006 to the present date related to hand-held mobile telephone use, operating a CMV while texting, using a mobile phone while operating a CMV, and distracted and/or inattentive driving attendant to the same;*

With the fifth deposition notice topic, Plaintiff seeks to question Faucette about all citations, warnings, tickets, and/or violations issued to Old Dominion drivers from 2006 to the present date related to use of hand-held telephone use, texting, or distracted or inattentive driving while operating a CMV.  Defendant argues that i) Plaintiff already had information regarding Webb's history of such citations prior to the original 30(b)(6) deposition, ii) that any citations issued to other drivers are irrelevant to Plaintiff's claims in this action, and iii) that the date range is not in keeping with the facts of this case, as Webb did not drive for Old Dominion after the March 2015 accident.  The Court agrees with Defendants as to the first and third points.

To begin, the Court credits Defendants' statements that Webb's driver history was produced to Plaintiff prior to the original 30(b)(6) deposition date.  Accordingly, to permit Plaintiff to further question Faucette regarding Webb's driver history would be unreasonably duplicative, and Plaintiff had ample opportunity to question Faucette on this issue at the first

deposition. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii). Additionally, in the interest of proportionality, the Court will limit the time frame with respect to which Plaintiff may question Faucette regarding other drivers' histories. The Court finds that it would be unduly burdensome to require Old Dominion to prepare to testify regarding *all drivers*' histories for the more than eleven-year period identified by Plaintiff. Accordingly, the Court will limit the time period for the fifth deposition notice topic to January 1, 2010 to the date of the accident, March 7, 2015, which was the last date on which Webb drove for Old Dominion.

The question that remains is whether the Court should grant Plaintiff leave to question Faucette regarding the driving histories of other Old Dominion drivers. The Court has closely reviewed Old Dominion's argument that such information is completely irrelevant to Plaintiff's claims. The Court disagrees. Plaintiff claims that Old Dominion negligently trained and/or supervised Webb. Evidence of repeated citations, warnings, and the like issued to other Old Dominion drivers due to mobile device-related conduct could potentially be relevant to the negligent training and supervision claim. That is, evidence of a high number of such situations could be relevant to Plaintiff's argument that Old Dominion failed to properly train or supervise its drivers, including Webb. Moreover, as Plaintiff points out, evidence of other drivers' conduct in relation to such conduct could be admitted as evidence of Old Dominion's routine practices as a company. *See* Fed. R. Evid. 406 ("Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice."). Additionally, as is discussed herein in relation to deposition notice topics 2 and 4, the Court may conclude "other acts" evidence, in this

18

case citation-worthy conduct by drivers that is imputed to Old Dominion, is admissible for a permissible purpose under Rule 404(b) of the Federal Rules of Evidence.

In short, Plaintiff may resume the 30(b)(6) deposition as to topic five as it relates to other drivers for the time period of January 1, 2010 to the date of the accident, March 7, 2015. Plaintiff may not further question Old Dominion's representative as to topic five as it relates to Webb.

> 6) *All accidents and/or collisions from January 1, 2006 to the present date involving ODFL drivers and/or operators engaged in mobile phone and/or hand held device use, including texting while operating a CMV, communicating on the telephone while operating a CMV, reckless and/or distracted driving attendant to the use, operation and/or manipulation of a mobile phone in a ODFL CMV;*

With the sixth deposition notice topic, Plaintiff seeks to question Faucette regarding all accidents and/or collisions involving Old Dominion drivers engaged in the use of mobile phones or engaging in reckless or distracted driving. For the same reasons that are set forth in relation to the fifth topic, the Court concludes that Plaintiff may question Faucette on this topic at the time of the reopened 30(b)(6) deposition as it relates to other drivers, but not as it relates to Webb. However, the Court will limit the time period to January 1, 2010 to the date of the accident, March 7, 2015.

> 7) *All FMCSA SMS Profile Unsafe Driving Violations pertaining to using a hand-held mobile telephone while operating a CMV and/or text messaging while operating a CMV from January 1, 2006 to the present date;*

With the seventh deposition notice topic, Plaintiff seeks to question Old Dominion regarding all "FMCSA SMS Profile Unsafe Driving Violations" stemming from the use of a hand-held mobile device and/or text messaging. As Defendants point out, Plaintiff questioned Faucette about the "Profile" at the original deposition; indeed, Plaintiff introduced it as an

exhibit. (DN 133-5 at 10-11; DN 133-9.) Accordingly, the Court concludes that it would be unnecessarily cumulative or duplicative to permit Plaintiff to further depose Faucette on this issue due to Plaintiff already having had ample opportunity to address this issue. With that said, however, the date range that is covered by the "Profile" in the record is unclear to the Court. It appears that the end date for the summary was February 1, 2016. (*See* DN 133-9 at 6-13 (lower right corner of each page).) In the event that the summary does not go back to January 1, 2010, the Court will permit Plaintiff to depose Faucette on the "FMCSA SMS Profile" for the date range of January 1, 2010 through the date on which the profile already introduced as an exhibit begins.

> 8) *All lawsuits and/or civil actions filed and/or initiated against ODFL from January 1, 2006 to the present date involving hand held mobile telephone while operating a CMV, cellular communications while operating a CMV and/or text messaging while operating a CMV;*

In the eighth deposition notice topic, Plaintiff seeks to question Faucette regarding all lawsuits filed or initiated against Old Dominion involving the use of a hand-held mobile device while operating a CMV or texting while operating a CMV. Defendants argue that Plaintiff could have asked Webb during his deposition if he had ever been party to another lawsuit, but she chose not to do so. They further argue that Plaintiff asked Faucette if he had ever testified in another lawsuit, and that Plaintiff could have expounded on this topic, but she chose not to do so. Finally, Defendants argue that to permit Plaintiff to question Faucette regarding *all* lawsuits and civil actions would not be proportionally related to this case, which, they say, should only relate to Webb, not other drivers.

With respect to Plaintiff's questioning of Faucette regarding his previous experience testifying, the first transcript page to which Defendants cite is merely a standard introductory

question. (*See* DN 133-5 at 4 ("Q. [] I take it you have been deposed before? A. Yes, sir.").) The second reference does appear to be a time at which Plaintiff's counsel could have asked more questions about past litigation involving Old Dominion. (*See id.* at 5.) However, the record contains only one page of the transcript on this issue. It is unclear to the Court the extent to which Plaintiff already questioned Faucette on this issue. Moreover, it was only during the original 30(b)(6) deposition that Plaintiff learned -- through production of the post-accident interview form -- that Old Dominion keeps its own records of accidents involving cell phones. It is plausible that Plaintiff will use production of more of those forms (as is addressed below in relation to topic nine) to further question Faucette regarding previous litigation. Accordingly, the Court does not find that it would be cumulative or duplicative to permit Plaintiff to further question Old Dominion on this issue.

With respect to Defendants' other arguments, this deposition topic is not designed to unearth evidence of other lawsuits in which Webb was involved. Plaintiff seeks information on lawsuits involving other drivers' conduct. The question is whether this information may be relevant to any of Plaintiff's claims. Evidence of other lawsuits against Old Dominion stemming from the use of cell phones while driving *may* be admissible as "other acts" evidence used for a permissible purpose, such as knowledge of previous incidents involving Webb's contemporaries. Plaintiff's position appears to be that this is relevant to her claim of negligent training or supervision. That is, if Old Dominion was aware of other lawsuits stemming from similar behavior, then it should have changed its own training and supervision practices in order to prevent future incidents, such as the accident underlying this case. *See* Fed. R. Evid. 404(b)(2).

Plaintiff should bear in mind that courts are wary of admitting such evidence for a number of reasons. For example, in *Shadrick v. Southern Health Partners, Inc.*, 2016 U.S. Dist. LEXIS 118431, *14 (W.D. Ky. Aug. 31, 2016), a lawsuit against an entity that provided medical staffing for jails, the court reasoned that, "in pursuing a pattern theory of constitutional violations, evidence of similar incidents of inmates' deaths in jails served by [defendant] is relevant to whether [defendant] acted with deliberate indifference to the medical needs of [the decedent]." The court went on to grant a motion to exclude the fact that the defendant was named in other lawsuits, stating that, "while the incidents of these deaths or near-deaths, along with [defendant's] investigation and changes in training, is relevant, the fact that lawsuits were filed in those instances is not relevant." *Id.* Finally, the court noted that "evidence of other lawsuits may be used as impeachment if Defendant opens the door to such an inquiry by arguing that [it] was not aware of the deaths of other inmates." *Id.* at *14-15. *See also Sadler v. Advanced Bionics, LLC*, 2013 U.S. Dist. LEXIS 46637, *9-13 (W.D. Ky. Apr. 1, 2013) (concluding that the *number* of other lawsuits against defendant should be excluded due to irrelevance and the risk of unfair prejudice but noting that the court would address at trial arguments that defendant opened the door to evidence of past lawsuits and/or whether such evidence was admissible for purposes of impeachment). Based on the foregoing, and being mindful of the fact that information within the scope of discovery need not be admissible in evidence to be discoverable, Fed. R. Civ. P. 26(b)(1), the Court will permit some questioning on this issue at the reopened 30(b)(6) deposition.

In this case, the Court will permit Plaintiff to question Old Dominion's representative regarding other litigation against Old Dominion involving the use of cell phones for the period of January 1, 2010 to the date of the accident, March 7, 2015.

9) *All accidents and/or collisions from January 1, 2006 to the present date [] in which [a] Post Accident Interview Form has been generated with a "Y" circled, attendant to the question "Was cellphone/handheld in use", has been marked "yes" by a black dot in the circle[.]*

With the ninth and final deposition notice topic, Plaintiff seeks to question Faucette regarding accidents and/or collisions from January 1, 2006 to the present in which a post-accident interview form has been generated answering "yes" to the question of whether a cell phone was in use at the time of the accident. Consistent with the Court's conclusions above, the Court finds that Plaintiff may further depose Old Dominion on this issue, but with certain limitations. Specifically, the Court finds that Plaintiff did not have an opportunity to fully question Faucette on this issue, as Defendant only produced the post-accident interview form regarding the accident underlying this litigation during the original 30(b)(6) deposition. Moreover, as is discussed above, the Court finds that evidence of other incidents involving Old Dominion drivers using cell phones *may* be relevant to Plaintiff's claims, particularly her claim of negligent training and supervision. Additionally, such evidence may be admissible through a permissible use of "other acts" evidence or to show a routine practice by Old Dominion. The Court is simply unconvinced that this evidence bears no relevance to Plaintiff's claims.

Accordingly, the Court will exercise its discretion and permit Plaintiff to question Old Dominion's representative on topic nine. The Court will again limit the time period to January 1, 2010 to the date of the accident, March 7, 2015.

### b. Requests for Production in Deposition Notice

Finally, the categories for production relate to, but do not track precisely, the nine topics discussed above. It appears to the Court that Defendants have not specifically objected to the nine categories of materials that appear on the deposition notice. Accordingly, the Court

concludes that it need not provide detailed analysis of the requests for production. Instead, the Court makes the following rulings as to what Old Dominion must produce consistent with the determinations above regarding the deposition topics:

> 1) *A complete copy of ODFL's driver handbook, driver manual, safety manual and/or employee training manual in effect on March 7, 2015, including all tables of contents and appendices.*

The motion to reopen the deposition is denied with respect to request for production one. The Court will not require Defendants to produce anything in response to request one for the reasons set forth above in relation to deposition notice topic one.

> 2) *True and complete copies of each and every Post Accident Interview Form from January 1, 2006 until the present date in which the "Y" circle, attendant to the question "Was cellphone/handheld in use", has been marked "yes" by a black dot in the circle.*

The motion to reopen the deposition is granted with respect to request for production two for the reasons set forth above in relation to deposition notice topic nine. The period for production is limited to January 1, 2010 to the date of the accident, March 7, 2015.

> 3) *True and complete copies of each and every citation, warning, ticket and/or violation issued to ODFL CMV operators and/or drivers from January 1, 2006 to the present date related to hand-held mobile telephone use, operating a CMV while texting, using a mobile phone while operating a CMV, and distracted and/or inattentive driving.*

The motion to reopen the deposition is granted with respect to request for production three, with the exception of data pertaining to Webb, for the reasons set forth above in relation to deposition topic notice five. The period for production is limited to January 1, 2010 to the date of the accident, March 7, 2015.

> 4) *All ODFL detailed inspection report data for operators and/or drivers pertaining to operating a CMV while texting violations, driving a CMV while texting violations and inattentive driving violations.*

25

The motion to reopen the deposition is granted with respect to request for production four, with the exception of data pertaining to Webb, for the reasons set forth above in relation to deposition notice topic five. The period for production is limited to January 1, 2010 to the date of the accident, March 7, 2015.

> 5) *Complete copies of each and every statement made by Danny E. Webb concerning the accident, including accident recordings, all post-accident recordings, all recorded telephone calls, all dispatch calls, all handwritten statements, all transcribed statements, all employee communicated statements, and all digital, electronic, and/or e-mail statements.*

The motion to reopen the deposition is denied with respect to request for production five. Plaintiff sought this exact category of materials in its first 30(b)(6) deposition notice. (DN 133-3 at 5.) The Court will not require Defendants to produce anything in relation to request for production number five.

> 6) *Complete copies of each and every document, material, paper, notation, letter, summary, writing, file, manuscript, report and/or record from January 1, 2006 to the present date concerning all accidents involving ODFL CMV operators and/or drivers using and/or utilizing mobile phone and/or hand-held mobile devices (including both voice and text messaging communications).*

The motion to reopen the deposition is granted with respect to request for production six for the reasons set forth above in relation to deposition notice topics five and six. The period for production is limited to January 1, 2010 to the date of the accident, March 7, 2015.

> 7) *All videos, recordings, testimonials, training materials, seminar materials, brochures, presentation materials, PowerPoints, displays, exhibits, demonstrations, pamphlets, bulletins, memorandum and/or communications (in any form or any type) disseminated from ODFL to its drivers regarding the use of hand held mobile devices while driving and/or texting while driving a CMV.*

The motion to reopen the deposition is granted with respect to request for production seven for the reasons set forth above in relation to deposition notice topic four. The period for production is limited to January 1, 2010 to the date of the original 30(b)(6) deposition, April 12, 2016.

> 8) *All internal and external emails sent or received by any ODFL email address relating in any way to 49 CFR 392.82 and/or 49 CFR 392.80.*

The motion to reopen the deposition is granted with respect to request for production eight for the reasons set forth above in relation to deposition notice topics two and three. The period for production is limited to January 1, 2010 to the date of the original 30(b)(6) deposition, April 12, 2016.

> 9) *All internal and external emails sent or received by any ODFL email address discussing and/or referencing this collision which occurred on March 7, 2015.*

The motion to reopen the deposition is denied with respect to request for production nine. Plaintiff had ample opportunity to explore this area of evidence at the time of the original 30(b)(6) deposition.

## ORDER

Plaintiff's motion to reopen the Rule 30(b)(6) deposition of Old Dominion (DN 134) is **GRANTED IN PART** and **DENIED IN PART**. Rulings on deposition notice topics and requests for production are set forth below. Plaintiff shall also be mindful of the additional limitations set forth above in the Discussion section.

A. <u>Deposition Notice Topics</u>

1) The motion is **denied** with respect to **topic one**.

27

2) The motion is **granted** with respect to **topic two**. The time period is limited to January 1, 2010 to April 12, 2016.

3) The motion is **granted** with respect to **topic three**. The time period is limited to January 1, 2010 to April 12, 2016.

4) The motion is **granted** with respect to **topic four**. The time period is limited to January 1, 2010 to April 12, 2016.

5) The motion is **granted** with respect to **topic five**. The time period is limited to January 1, 2010 to March 7, 2015.

6) The motion is **granted** with respect to **topic six**. The time period is limited to January 1, 2010 to March 7, 2015.

7) The motion is **denied in part** and **granted in part** with respect to **topic seven**.

8) The motion is **granted** with respect to **topic eight**. The time period is limited to January 1, 2010 to March 7, 2015.

9) The motion is **granted** with respect to **topic nine**. The time period is limited to January 1, 2010 to March 7, 2015.

B. Requests for Production

1) The motion is **denied** with respect to **request one**.

2) The motion is **granted** with respect to **request two**. The time period is limited to January 1, 2010 to March 7, 2015.

3) The motion is **granted** with respect to **request three**. The time period is limited to January 1, 2010 to March 7, 2015.

4) The motion is **granted** with respect to **request four**.  The time period is limited to January 1, 2010 to March 7, 2015.

5) The motion is **denied** with respect to **request five**.

6) The motion is **granted** with respect to **request six**.  The time period is limited to January 1, 2010 to March 7, 2015.

7) The motion is **granted** with respect to **request seven**.  The time period is limited to January 1, 2010 to April 12, 2016.

8) The motion is **granted** with respect to **request eight**.  The time period is limited to January 1, 2010 to April 12, 2016.

9) The motion is **denied** with respect to **request nine**.

cc:  Counsel of record